**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-2313-WJM

JORGE J. ROSALES,

      Applicant,

v.

RICK RAEMISCH, Exec. Dir., CDOC, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on the Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (ECF No. 1)[1] ("Application") filed *pro se* by Applicant

Jorge J. Rosales.  Applicant challenges a conviction imposed in the District Court for

Boulder County, Colorado, Case No. 2015CR52.  Respondents filed an Answer (ECF

No. 13).  Applicant filed a Reply (ECF No. 14).  After reviewing the record before the

Court, including the Application, Answer, Reply, and the state court record, the Court

FINDS and CONCLUDES that the Application should be denied and the case dismissed

with prejudice.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Colorado Court of Appeals described the relevant factual and procedural

background of Case No. 2015CR52 as follows:

---

[1] "(ECF No. 1)" identifies the docket number assigned to a specific paper by the court's case
management and electronic case filing system (CM/ECF). This manner of identifying a
document on the electronic docket is used throughout this order.

> Defendant, Jorge Jovani Rosales, was convicted of second degree
> kidnapping, aggravated robbery, menacing, and third degree assault for
> his role in the robbery of his supervisor. Rosales and his accomplice told
> their supervisor that they would drive him to see a truck he intended to
> purchase with cash. Once inside the car, they locked the doors, and
> Rosales held the victim at gunpoint as his accomplice drove to a remote
> location. There, Rosales dragged the victim from the car; the two men
> beat him; and, while Rosales held a gun to the victim's head, the
> accomplice took the cash from the victim's pocket.

(ECF No. 9-3 at 2). In the direct appeal, Applicant argued "the evidence was insufficient to support his convictions for kidnapping and robbery" as a principal, and no complicity jury instruction was tendered, thus his convictions should be reversed. (*Id.*). The Colorado Court of Appeals affirmed the convictions based on Applicant's role as a principal. (*Id.* at 9). Respondents contend that the conviction became final on September 16, 2018. (ECF No. 9 at 4).

Applicant commenced this § 2254 proceeding on September 10, 2018. (ECF No. 1). He alleges his due process rights were violated because no complicity jury instruction was given and the prosecution failed to prove beyond a reasonable doubt that Applicant "knowingly seized and carried the victim (Mr. Cheek) from one place to another and/or knowingly took anything from victim." (*Id.* at 5, 7). He requests "relief from his unlawful convictions." (*Id.* at 7).

In the Answer, Respondents argue that § 2254(d) bars federal habeas corpus relief. (ECF No. 13 at 13). They contend "there was a significant amount of evidence presented at trial showing Applicant was guilty of the charged crimes as a principal," and the Colorado Court of Appeals' factual determinations were supported by the record and not unreasonable. (*Id.* at 13-14).

In the Reply, Applicant does not address the merits of his claim. (ECF No. 14).

Instead, he requests appointment of counsel "if an evidentiary hearing is warranted."

(*Id.* at 3). He attached a copy of his Reply Brief from the direct appeal. (*Id.* at 7-19).

## II. STANDARD OF REVIEW

The Court must construe Applicant's filings liberally because he is not

represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v.*

*Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an

advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Applicant bears the burden of proof under § 2254(d). *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court reviews claims of legal error and mixed questions of law and fact

pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 829-30 (10th

Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is

whether Applicant seeks to apply a rule of law that was clearly established by the

Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529

U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant

state‑court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*. Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established

federal law, that is the end of the Court's inquiry under § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts. *Id.* at
> 407‑08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is

objective. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue

the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for
fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2).

*See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2)

allows the Court to grant a writ of habeas corpus only if the relevant state court decision

was based on an unreasonable determination of the facts in light of the evidence

presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the

state court's factual determinations are correct, and Applicant bears the burden of

rebutting the presumption by clear and convincing evidence. "The standard is

demanding but not insatiable . . . [because] '[d]eference does not by definition preclude

relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537

U.S. 322, 340 (2003)).

The Court's analysis is not complete "[e]ven if the state court decision was

contrary to, or involved an unreasonable application of, clearly established federal law."

*Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural

defect in the trial that defies harmless-error analysis, [the Court] must apply the

harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id*.; *see*

*also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must

conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a

state court proceeding regardless of whether the state court found error or conducted

harmless error review). Under *Brecht*, a constitutional error does not warrant habeas

relief unless the Court concludes it "had substantial and injurious effect" on the jury's

verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the

court finds itself in 'grave doubt' about the effect of the error on the jury's verdict."

*Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave

doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual

equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court

makes this harmless error determination based upon a review of the entire state court

record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

## III. MERITS OF APPLICANT'S CLAIM

Applicant alleges the evidence was insufficient to support his convictions as a

principal for second degree kidnapping and aggravated robbery. (ECF No. 1 at 5).

Further, he contends that even if the evidence could support his complicity, the

prosecution failed to tender a complicity jury instruction. (*Id.*). Thus, he claims his

convictions are unlawful. (*Id.* at 23).

The proper standard for evaluating a claim challenging the sufficiency of the

evidence is found in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme

Court held, "the relevant question is whether, after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This familiar

standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in

the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts." *Id.* "Under *Jackson*, federal courts must look to state law for

'the substantive elements of the criminal offense,' but the minimum amount of evidence

that the Due Process Clause requires to prove the offense is purely a matter of federal

law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting

*Jackson*, 443 U.S. at 324, n.16). To the extent an insufficient evidence claim involves

an interpretation of state law, the state court's interpretation "binds a federal court sitting

in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).

"Sufficiency of the evidence is a mixed question of law and fact." *Maynard*, 468 F.3d at

673. The Court must apply both § 2254(d)(1) and (d)(2) and "ask whether the facts are

correct and whether the law was properly applied to the facts." *Id.*

The Colorado Court of Appeals applied this clearly established federal law and

reasoned as follows in rejecting Applicant's insufficient evidence claim:

A. Preservation and Standard of Review

. . . On a challenge to the sufficiency of the evidence, we must
evaluate whether the evidence, viewed as a whole and in the light most
favorable to the prosecution, is both substantial and sufficient to support
the defendant's guilt beyond a reasonable doubt. [*People v. McCoy*, 2015
COA 76M, ¶¶ 6-36 (*cert. granted* Oct. 3, 2016) (applying *Jackson*)]. We
give the prosecution the benefit of every reasonable inference that might
fairly be drawn from the evidence. *People v. Thornton*, 251 P.3d 1147,
1149 (Colo. App. 2010).

B. Kidnapping

To convict a defendant of second degree kidnapping, the jury must
find that the defendant knowingly seized and carried the victim from one
place to another without the victim's consent. Rosales argues that the
prosecution failed to present sufficient evidence that he personally "seized
and carried" the victim. We disagree.

The requirement that the defendant "seize and carry" the victim
from one place to another is known as the "asportation" element of
kidnapping. *People v. Bondsteel*, 2015 COA 165, ¶ 94 (*cert. granted* Oct.
31, 2016). This element is satisfied when the defendant moves the victim.
*Id.*; *see also People v. Bridges*, 199 Colo. 520, 528 n.18, 612 P.2d 1110,
1116 n.18 (1980) ("[F]or second-degree kidnapping, only movement of the
victim from one place to another [is] required.").

Where the prosecution relies on insubstantial movement to satisfy
the asportation element, evidence that the movement increased the risk of

8

harm to the victim will suffice to support the conviction. *People v. Torres*, 141 P.3d 931, 935 (Colo. App. 2006).

Rosales says he did not commit kidnapping because he did not drive the car in which the victim was held captive. But the victim testified that when Rosales dragged him from the car, the victim attempted to escape by running down the road. Rosales caught him and dragged him back to the car and threw him into a ditch.

From this testimony, a reasonable jury could conclude that Rosales moved the victim from one place to another. Therefore, this evidence is sufficient to satisfy the asportation element of second degree kidnapping. Furthermore, because Rosales dragged the victim some distance down the road and threw him into a ditch, we conclude that Rosales's movement of the victim was substantial. *See Bondsteel*, ¶¶ 99-101 (movement substantial where defendant dragged victim across a hiking trail and down to a creek); *Torres*, 141 P.3d at 935 (movement substantial where defendant forced victim from the ground level of her house into the basement).

Even if we assume this movement was insubstantial, it nevertheless increased the victim's risk of harm and therefore satisfies the asportation element. Rosales dragged the victim back to the car to prevent his escape and continued assaulting him. Rosales and his accomplice hit the victim with a gun, attempted to break his leg, and kicked him in his head, jaws, and rib cage. Preventing the victim's escape from this assault clearly increased the risk he would be harmed. *See People v. Owens*, 97 P.3d 227, 236 (Colo. App. 2004) (insubstantial movement increases risk of harm to the victim where it decreases the victim's ability to escape).

Accordingly, we conclude that the evidence was sufficient to support Rosales's conviction for second degree kidnapping as a principal.

C. Robbery

To convict a defendant of robbery, the jury must find that the defendant knowingly took something of value from the victim by the use of force, threats, or intimidation. Rosales argues that the prosecution failed to present sufficient evidence that he personally took anything of value from the victim, and that therefore his conviction for robbery must be reversed. We disagree.

A defendant need not physically remove something from the victim to commit a robbery. Rather, "[t]he gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of a transaction culminating in the taking of property from the

victim's person or presence." *People v. Bartowsheski*, 661 P.2d 235, 244 (Colo. 1983); *see also People v. Borghesi*, 66 P.3d 93, 100 (Colo. 2003) (concluding that robbery is a crime against the person, not against property, because it criminalizes the assaultive nature of the taking, not the taking itself). A defendant commits robbery, for example, when he points a gun at the clerk of a retail store and instructs the clerk to remove money from the cash register, even though the defendant did not physically take the money from the register. *See People v. James*, 981 P.2d 637, 641 (Colo. App. 1998) (citing *People v. Alexander*, 169 N.W.2d 190 (Mich. Ct. App. 1969)). Because the defendant's force deprived the clerk of control over the property, the defendant committed a robbery. *Id.* Therefore, a defendant commits robbery when, as a result of the defendant's force, threats, or intimidation, the victim loses his ability to control his property. *Id.*

Here, the victim testified that Rosales held him at gunpoint while Rosales's accomplice removed cash from the victim's pocket. From this testimony, a reasonable jury could have concluded that as a result of Rosales's use of force, the victim lost control over the cash in his pocket.

Moreover, "[t]here is no requirement that the application of force or intimidation must be virtually contemporaneous with the taking." *Bartowsheski*, 661 P.2d at 244. Rather, any use of force used to deprive a victim of his property — before or after the taking — constitutes robbery.

Therefore, a defendant commits robbery by using force to prevent someone from retrieving his or her stolen property, even if the defendant was not the thief. *See People v. Fox*, 928 P.2d 820, 821 (Colo. App. 1996). For example, in *Fox*, the defendant's wife stole the victim's purse from her shopping cart. *Id.* When confronted by the victim's husband in the parking lot, the defendant forcefully shoved the victim's husband and drove away with his wife and the purse. *Id.* A division of this court held that sufficient evidence supported the defendant's conviction for robbery because he used force to prevent the victim's husband from regaining his property, even though the defendant himself did not take the purse from its owner. *Id.*

Similarly here, although Rosales did not physically remove the cash from the victim's pocket, the victim testified that Rosales held him at gunpoint while the accomplice took the cash. From this testimony, a reasonable jury could conclude that Rosales's use of force prevented the victim from regaining control over his property.

Accordingly, we conclude that the evidence was sufficient to support Rosales's conviction for robbery as a principal.

(ECF No. 9-3 at 3-9).

Applicant does not meet his burden of showing that the Colorado Court of Appeals' determinations are contrary to clearly established federal law under § 2254(d)(1). (*See* ECF No. 1). He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Applicant also fails to demonstrate the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). The Colorado Court of Appeals found as a factual matter that "the evidence was sufficient to support Rosales's conviction for second degree kidnapping as a principal," and "the evidence was sufficient to support Rosales's conviction for robbery as a principal." (ECF No. 9-3 at 6, 9). In reaching these conclusions, the appellate court cited to record testimony by the victim. (*See id.*). Pursuant to § 2254(e)(1), these factual findings are presumed correct, and Applicant has not rebutted that presumption by clear and convincing evidence. Likewise, this Court is bound by the Colorado Court of Appeals' application of state law. *Bradshaw*, 546 U.S. at 76 ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Moreover, the victim's testimony in the record supports these factual findings. The victim testified that, after exiting the vehicle, Applicant (Jorge or George, Rosales) and his co-defendant (Benny Castillo) physically attacked him, Applicant kept him from

11

running away, and Applicant held a gun to his head while the co-defendant took the

victim's money:

> Q. Okay. You said both men hit you. What happened next?
> A. Um, I tried to push Benny off of me, but he is way bigger than me. And he had a hold on my jacket, and, um, he pushed me and tried to take me down right there on the ground. And, um, I fought with him and got up off of the ground and I started taking off down the gravel road. And that's when he hollered at George, um, to go chase me. And George had come up, grabbed me by the back of my jacket and hit me with something metal right on the side of my head. Just and every time they would hit me with it, they just wanted to make you drop to your knees.
> Q. So when you say you tried to run away, were you able to get away from them?
> A. No.
> Q. **What happened after Mr. Rosales -- George, after he caught up with you and hit you, what happened next?**
> A. I went down on one knee and grabbed my head. And he hit me again three or four times on this side. And then Benny grabbed me ran up there and grabbed me and **they drug me back by the Blazer** and was just working me over.
>
>              . . .
> Q. How did you get from the road to the snowy area next to the road?
> A. Fighting with Benny and George. George would keep coming up there putting that pistol right here and then he would move it right here on my chest and hitting me with that pistol. And Benny and then **they threw me down in that ditch** and then pounced on me just like that.
>
>              . . .
> A. Um, they kept -- he still kept trying to break my leg, man, and Benny did. And, um, this -- George, he come over there and keep trying to put the pistol back on me, smacking me with it. And, um, it just kept going on and on and on, beating and kicking.
> Q. What happened after -- after that period of time?
> A. Um, they would grab my pants and -- Benny would, and, um, lift me -- lift my rear end up off the ground, you know. And then he was trying to rip the pockets off of the back of my jeans, and that's when he, um, found the money from the bank in my back pocket.
> Q. And now is Mr. Castillo doing that?
> A. Yes, sir.
> Q. **Where was Mr. Rosales at that time?**
> A. **Right beside him with a pistol on my head.**
> Q. Um, what happened when Mr. Castillo found the money in your pocket?
> A. Um, they started stomping me some more, and, um, I don't know how long that went on for . . . And, um, they -- Benny ran back to that Blazer

and said something to George and, um, George came over there in the ditch, sticking that pistol in my face, and he was -- would be talking to me and I couldn't understand what he was saying because I was half out of it. Finally, he raised me up off of the ditch and held that pistol right there and told me, If you say anything about us doing this, if you can make it out of here, then you better not say anything or we are going to go over and do a lot worse . . .

. . .

Q. After Mr. Rosales said that to you, what did he do next?
A. He pushed me back in the ditch and he walked backwards crouching down a little bit and was holding the pistol waving it at me, and he said, You better remember not to tell.

State Court Record, 2015CR52, Trial Tr., February 29, 2016, at 256:23-257:18, 258:4-10, 260:11-262:1 (emphasis added).

Taking this evidence in the light most favorable to the prosecution as this Court must, the Court finds that the Colorado Court of Appeals did not engage in a contrary or unreasonable application of the *Jackson* standard to the facts presented at trial. The victim's testimony supports the Colorado Court of Appeals' conclusions with regard to the kidnapping and robbery convictions. Thus, the Court finds that the Colorado Court of Appeals' conclusions were not contrary to or an unreasonable application of federal law or the facts presented at trial.

## IV. CONCLUSION

Based on the above findings, the Court concludes that the Colorado Court of Appeals' decision was not contrary to or an unreasonable application of a clearly established rule of federal law or based on an unreasonable determination of the facts under 28 U.S.C. § 2254(d). Applicant's claims lack merit and the § 2254 Application must be dismissed. Because the Court has determined that the § 2254 Application can be resolved based on the existing record, no evidentiary hearing is warranted, nor is it necessary to appoint counsel. *See Torres v. Mullin,* 317 F.3d 1145, 1161 (10th Cir.

2003); Fed. R. Governing Section 2254 Cases 8(a) and 8(c).   This is not a case where

the state court applied an improper legal standard and disputed issues of fact remain for

the federal district court.  *Cf. Milton v. Miller*, 744 F.3d 660, 673 (10th Cir. 2014)

(remanding case to district court for evidentiary hearing where the state appellate

court's decision did not survive scrutiny under § 2254(d)(1), and disputed issues of fact

existed that precluded the court of appeals from completing a de novo review of

petitioner's ineffective assistance of appellate counsel claim).

     For the reasons stated herein, it is

     **ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 (ECF No. 1) is DENIED and this case is DISMISSED WITH PREJUDICE.

It is further

     **ORDERED** that there is no basis on which to issue a certificate of appealability

pursuant to 28 U.S.C. § 2253(c).


     Dated this 22nd day of January, 2019.

                                     BY THE COURT:

                                     _____

                                     William J. Martinez
                                     United States District Judge